PREVOR–MAYORSOHN CARIBBEAN,
INC., Plaintiff, Appellant,

v.

PUERTO RICO MARINE MANAGE-
MENT, INC. et al., Defendants,
Appellees.

No. 78–1359.

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1980.

Decided April 11, 1980.

Harry A. Ezratty, San Juan, P. R., for plaintiff, appellant.

Jose Antonio Fuste, Hato Rey, P. R. with whom Jimenez & Fuste, Hato Rey, P. R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, WIS-DOM,* Senior Circuit Judge, and CAMP-BELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Prevor Mayorsohn Caribbean, Inc. (Prevor), a wholly owned subsidiary of Prevor

* Of the Fifth Circuit, sitting by designation.

Mayorsohn International, Inc., brought suit against Puerto Rico Marine Management, Inc. (PRMM), to recover for damage to thirteen trailer loads of produce shipped on vessels owned and controlled by PRMM. The complaint basically alleged that as a result of negligent storage by the carrier and vessel unseaworthiness the cargo suffered rot and decay. Prevor as the consignee named in the appropriate bills of lading received the various loads of spoiled produce in Puerto Rico, salvaging what it could for sale to wholesalers at a reduced rate. Prevor sought as damages the difference between the going market rate and what it had recovered through those sales.

On the second day of trial Prevor's president, who also served as vice-president of the parent company, Prevor International, was asked by the court if he had any evidence indicating what he had paid for one particular shipment of damaged produce. The following then ensued:

"THE WITNESS: No, I don't have evidence here. We are claiming it at the market value, not at the cost.

THE COURT: But that is what I am asking you; a question which I would like to have answered.

Do you have any evidence of how much you paid for that shipment? Did you ever pay for that shipment?

THE WITNESS: My company here sells the produce; all our fruits and vegetables on consignment from our New York office. We are commissioned as agents representing them.

THE COURT: For whom?

THE WITNESS: For our parent company, Prevor Mayrsohn International.

THE COURT: So this thing did not belong to your company then, to the party that is suing here?

THE WITNESS: No, it belonged to the parent company. They buy the tomatoes and I sell them as their agent.

BY MR. FUSTE [Counsel for PRMM]:

Q. Was it the case in the thirteen shipments—it belonged to them on consignment?

A. They buy the merchandise. They are principals. Prevor Mayrsohn Caribbean represents them in Puerto Rico, and we receive a commission for selling them.

THE COURT: As an agent.

BY MR. FUSTE:

Q. So, actually, the merchandise in the thirteen shipments—not to ask you one by one—belongs to the parent company?

A. Were purchased by them and paid by them and shipped down to me.

.    .    .    .    .

BY MR. FUSTE:

Q. So, these thirteen shipments belonged to the New York International corporation?

A. Yes."

At this point PRMM moved for dismissal of the complaint on the ground that suit had not been instituted by the proper party.[1] After hearing from counsel, the court granted Prevor three days in which to file a memo "to perhaps show me that under .   . Rule 15 [amendments to pleadings] or Rule 21 [misjoinder and non-joinder of parties], [a] substitution can be effected." The court also suggested to Prevor that it "not only file a memo on this, but actually make a motion for substitution of parties; if that's what you think should be done in this case." Prevor responded within the allotted time, not, however, by requesting a substitution of parties, but rather by arguing that it was, in fact, a proper plaintiff, that it could prove its status as such if the court would grant it an opportunity to present the nec-

---

1. The court in considering this motion noted that in determining the proper course of action it would necessarily have to consider the effect of the statute of limitations, which had already run and might, in the court's words, "kill the whole action." The action is governed by the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.*, which provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered  .   .   .." 46 U.S.C. § 1303(6).

essary billing and accounting documentation, and that at any rate the court should allow it time to seek an assignment of the cause of action from its parent company.[2] The district court rejected these contentions and requests, finding that Prevor had "failed to discharge its burden of showing that it is the real party in interest" and that "[t]o permit an assignment . . . at this time [would] unduly prejudice [the] defendant herein." Accordingly, the court dismissed the action.[3] We reverse.

The district court in concluding that Prevor was not the real party in interest emphasized the fact that, based on the testimony of its president, Prevor apparently did not hold title to the damaged goods. The court noted:

"The testimony of Mr. Prevor is on its four corners consonant with the figure of *consignment* or *bailment* or *agency* to sell . . . .. The Court agrees with defendant herein that the damaged goods were on *bailment*, and that Prevor Caribbean was a mere *consignee*, which had no legal title to the damaged goods. Prevor Caribbean was acting as its parent company's

*agent* for the sale of consigned goods . . . .." (Emphasis added.)

■ Prevor now vehemently argues that it did hold an ownership interest; but putting that aside and accepting the district court's characterization of the relationship as one of bailment, consignment or agency only, Prevor was still a proper party to maintain the present action. "Niceties of title" alone do not determine whether one is the real party in interest. *See M. W. Zack Metal Co. v. The S.S. Birmingham City*, 291 F.2d 451, 453 (2d Cir. 1961); 6 Wright & Miller, Federal Practice and Procedure § 1541 at 633–34.

■ As amended in 1966, Rule 17(a) specifically provides, *inter alia*, that a "bailee . . . may sue in his own name without joining with him the party for whose benefit the action is brought . . . ;"[4] thus the district court's finding of bailment does not provide a legal basis for its order of dismissal. *See generally* 3A Moore's Federal Practice ¶ 17.12 at 17–149. *Cf. The W. C. Block*, 71 F.2d 682 (2d Cir.), *cert. denied*, 293 U.S. 579, 55 S.Ct. 91, 79

---

2. Prevor's failure to move for a substitution of parties apparently resulted from its fear that by doing so it would have run afoul of the statutory limitations period which had already passed. This concern, *see* note 1 *supra*, was likely misplaced. Fed.R.Civ.P. 17(a) states, in part,

▸ "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

The "main thrust" of this passage "is to allow a correction in parties *after* the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest." 3A Moore's Federal Practice, ¶ 17.15–1 at 17–182. (Emphasis added.) Although Prevor thus may have been able to continue the case simply by having its parent company ratify its act in commencing suit, or by substituting or joining the parent, Prevor's failure to do so cannot properly provide grounds for dismissal where it was, in its own right, a proper plaintiff. *See infra.*

3. The court dismissed the action "without prejudice," but as the statute of limitations had already run, *see* note 1 *supra*, the court's "without prejudice" disposition is hardly of comfort to the plaintiff or its parent company.

4. Rule 17(a), in its entirety, provides:

"(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

L.Ed. 676 (1934). Alternatively, the district court's description of Prevor as a "mere consignee" and an "agent" does not lend support to its ultimate finding that Prevor lacked the proper interest to maintain suit. Long-established admiralty practice allows either "an owner *or* consignee [to] recover for damage to cargo," *Elia Salzman Tobacco Co. v. SS Mormacwind*, 371 F.2d 537, 540 (2d Cir. 1967) (emphasis added); *McKinlay v. Morrish*, 62 U.S. (21 How.) 343, 355, 16 L.Ed. 100 (1858), and provides that "the agent of absent [cargo] owners may libel, either in his own name, as agent, or in the name of his principals, as he thinks best. . . ." *Houseman v. The Schooner North Carolina*, 40 U.S. (15 Pet.) 40, 49, 10 L.Ed. 653 (1841). *See Levatino Co. v. M/S Helvig Torm*, 295 F.Supp. 725, 729 (S.D.N.Y.1968).[5] Prevor, as the party who was named as consignee in the bills of lading, who received and took possession of the shipments of spoiled produce, and who ultimately sold those goods to wholesalers apparently far below the prevailing market price, had sufficient interest in the damaged cargo to maintain the present action. *Cf. Petition of M/V Elaine Jones*, 480 F.2d 11, 25 (5th Cir. 1973), *cert. denied*, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975) (requirement that action be prosecuted in name of real party in interest "directs attention to whether the plaintiff has a significant interest in the particular action he has instituted"). *See* 6 Wright & Miller, Federal Practice and Procedure, § 1542, at 639.

■ The basic purpose of Rule 17(a)'s insistence that every action be prosecuted in the name of the real party in interest is to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata. *Pacific Coast Agricultural Export Association v. Sunkist Growers, Inc.*, 526 F.2d 1196,

1208 (9th Cir. 1975), *cert. denied*, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976); 6 Wright & Miller, Federal Practice and Procedure, § 1543, at 644. To accomplish this, however, it is not necessary that there always be only one real party in interest. *See* 6 Wright & Miller, *supra*, § 1543 at 645 (bailee's express right under Rule 17 to bring action should not be read as preventing bailor from maintaining suit; provision allowing suit in name of party with whom or in whose name a contract has been made for the benefit of another does not prevent third-party beneficiary, where applicable law allows, from commencing the action); James, Civil Procedure § 9.6, at 394 (1965). *Compare* Wright & Miller, *supra*, at 644 n.47. In such situations, special res judicata principles protect against the possibility of double recovery. Thus a "judgment in favor of or against either bailor or bailee for the whole loss bar[s] any recovery by the other," James, *supra* at 393; *The W. C. Block, supra*, 71 F.2d 682, and principals are bound by judgments entered in actions properly litigated by their agents on their behalf. James, *supra*, § 1128, at 592; 1B Moore's Federal Practice ¶ 0.411, at 1253.

■ In cases like the present involving maritime commerce, Rule 17(a) has been construed to accommodate the somewhat flexible rules that have developed in the admiralty practice defining the parties who may properly commence an action for damage to cargo. *See generally* 2A Benedict on Admiralty, § 53 (7th ed. 1977). Not only has an exclusive interest in the damaged goods not been required in all cases, but courts have often looked to the practicalities of the situation in assessing the likelihood that a carrier might ultimately be exposed to a double recovery and, when satisfied that double recovery is not a threat, and that the plaintiff has a proper interest in maintaining the action, have allowed that plaintiff to maintain the action.

---

5.  In the present case, PRMM voices no serious argument that Prevor was not authorized to act as its parent company's agent, *cf. Houseman v. The North Carolina*, 40 U.S. (15 Pet.) 40, 49, 10 L.Ed. 653 (1841); *Aunt Jemima Mills Co. v.*

*Lloyd Royal Belge*, 34 F.2d 120, 122 (2d Cir. 1929), but rather contends that *as* agent for the parent company, Prevor was barred from bringing the present proceedings.

See *Elia Salzman Tobacco Co. v. SS Mormacwind*, 371 F.2d 537, 540 (2d Cir. 1967) (the fact all other possible claimants to the damages were libelants and that their libels had been dismissed protected defendant against any possible double recovery); *Levatino Co. v. M/S Helvig Torm*, 295 F.Supp. 725, 728 n. 4 (S.D.N.Y.1968) (since shippers were time barred from instituting new and separate action, possibility of double recovery was eliminated). Here the fact that Prevor and its parent company are clearly "all part of a single operation," *Salzman, supra* at 539, and further, as PRMM itself urges, that any new proceeding by Prevor International would be time barred, demonstrate that PRMM is amply protected against the possibility of exposure to subsequent suit. Where the carrier is thus "protected against double recovery, [it] has no concern with any equities between the owner or consignee and others." *Salzman, supra* at 540.

*The judgment of the district court dismissing the complaint is vacated and the case remanded for further proceedings not inconsistent herewith.*